1

2

3

4

5

6

7

8      **UNITED STATES DISTRICT COURT**

9      **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  DONNA JACOBSON; and MURRAY
    JACOBSON,
12
                          Plaintiffs,
13
          v.
14
    BALBOA ARMS DRIVE TRUST #5402
    HSBC FINANCIAL TRUSTEE et al.,
15
                          Defendants.
16

CASE NO. 10-CV-2195-JM (RBB)

**ORDER GRANTING
DEFENDANTS ONEWEST
BANK, F.S.B. AND MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.'S AND MTC
FINANCIAL INC., DBA
TRUSTEE CORPS'S MOTIONS
TO DISMISS**

Doc. Nos. 26 & 28

17      *Pro se* plaintiffs Donna Jacobson and Murray Jacobson ("Plaintiffs") bring the instant

18  suit based on a loan obtained in 2006 and secured by a Deed of Trust encumbering certain real

19  property, and the subsequent foreclosure and eviction proceedings instituted against them.

20  Plaintiffs allege sixteen different causes of action against all named defendants, including

21  claims for breach of contract, wrongful foreclosure, fraud, and violations of the federal Truth

22  in Lending Act ("TILA") and Real Estate Settlement Procedures Act ("RESPA"). (Doc.

23  No. 25, hereafter "FAC.") Three of the defendants now bring two separate motions to dismiss

24  all claims against them. (Doc. Nos. 26 & 28.)

25      Pursuant to CivLR 7.1(d)(1), the court determines this matter is appropriate for

26  resolution without oral argument. For the reasons set forth below, the court hereby GRANTS

27  both motions to dismiss.

28  //

1    I.    BACKGROUND

2            Plaintiffs are a married couple residing in San Diego County, and the alleged owners

3    of a parcel of real property identified as 5402 Balboa Arms Drive, Unit 340, San Diego,

4    California, Assessor's Parcel No. 361-029-046 (the "Property"). (FAC at p.4.) On or around

5    August 23, 2006,[1] Plaintiffs signed two promissory notes for loans in the amounts of $349,544

6    ("Loan 1") and $87,386 ("Loan 2"), secured by Deeds of Trust on the Property. Both Deeds

7    of Trust list Defendant Newport Mortgage Funding, Inc. ("Newport") as the lender, Chicago

8    Title Company as the trustee, and Defendant Mortgage Electronic Registration Systems, Inc.

9    ("MERS") as the beneficiary.[2] (Id. at p.4 & Exh. V.)

10          According to Plaintiffs, they made timely payments on both loans for the next year and

11   a half, through March of 2008. (Id. at p.4.) Around this time, however, Plaintiffs became aware

12   of some irregularities in the amounts owed and obtained a professional audit of their loans.

13   (Id.) The audit revealed that the loans were "predatory" in nature, and that they had been

14   issued in violation of TILA. (Id.) As a result, Plaintiffs sent a Notice of Rescission to both

15   Newport as well as Defendant IndyMac Bank[3] ("IndyMac") on February 19, 2008, demanding

16   cancellation of both loans. (Id. at pp. 4-5 & Exh. II.)

17          IndyMac subsequently agreed to settle the dispute with Plaintiffs by executing a

18   modified loan agreement ("Modification Agreement") that would lower their interest rate and

19

20

21

22          [1] Plaintiffs state in the FAC that the loans were entered into on or around September

23   9, 2006; however, August 23, 2006 is the date of execution on both Deeds of Trust. (FAC at Exh. V.)

24          [2] Plaintiffs' original Complaint also alleged numerous defects in the loan origination

25   process, including Newport's failure to "review[] Plaintiffs' income[] to ensure the subject loan was sustainable," and the fact that neither "the adjustable nature of the loan" nor "the

26   consequences of signing of the loan documents" were explained to Plaintiffs. (Doc. No. 1 Exh. A ¶¶ 30, 34-35.) However, these allegations are not repeated in the FAC, although they

27   appear indirectly in Plaintiffs' description of a Notice of Rescission that was later sent to Defendant IndyMac Bank. (FAC at pp. 4-5.)

28          [3] As discussed infra, it is unclear what IndyMac's role is in relation to Plaintiffs' loan

obligations, or why Plaintiffs contacted them when seeking to rescind their agreements.

1  monthly interest payments on Loan 1[4] in exchange for Plaintiffs' agreement to withdraw their

2  demand for rescission. (Id. at p.5 & Exh. III.) The Agreement was negotiated and entered into

3  on IndyMac's behalf by an IndyMac officer, Defendant Brandon Latman ("Latman"). (Id.)

4  According to Plaintiffs, after entering into the Modification Agreement with IndyMac,

5  they continued to make full and timely payments at the negotiated reduced rate for the next

6  four months until Defendant OneWest Bank, F.S.B[5] ("OneWest") contacted them to inform

7  them that it was "taking over the IndyMac assets including its mortgage loan accounts." (Id.

8  at p.6.) Plaintiffs claim that OneWest then rejected and returned the new, lower payments that

9  they had made, and notified Plaintiffs that it was rescinding the Modification Agreement. (Id.)

10  However, copies of official records from the San Diego County Recorder's Office

11  submitted by Defendants MERS, OneWest, and MTC Financial Inc., dba Trustee Corps[6]

12  ("Trustee Corps") raise a question as to whether IndyMac ever held an interest in Plaintiffs'

13  loan.[7] According to those records, the originating lender on the loan, MERS, executed an

14  Assignment of Deed of Trust on September 24, 2009, transferring its interest in the Deed of

15  Trust directly to OneWest. (Doc. Nos. 26-5 to -11, Request for Judicial Notice

16  ("OneWest/MERS RJN"), Exh. 2; Doc. No. 28-2, Request for Judicial Notice ("Trustee Corps

17  RJN"), Exh. B.) That same day, OneWest executed a Substitution of Trustee, substituting

18  Trustee Corps for Chicago Title Company as trustee on the transferred Deed of Trust.

19  (OneWest/MERS RJN at Exh. 3; Trustee Corps RJN at Exh. C.) There is no mention of

20  IndyMac in the public records before this court.

21  In any event, it is undisputed that foreclosure proceedings were subsequently begun

22  against Plaintiffs. (FAC ¶¶ 8, 51.) On October 2, 2009, Trustee Corps recorded a Notice of

23  Default and Election to Sell Under Deed of Trust ("Notice of Default") against the Property.

24  _____

25  [4]  All subsequent references are to the Loan 1 Deed of Trust. The current status of Loan 2 is unclear from the filings.

26  [5]  Erroneously named in the FAC as "Defendant One West Bank."

27  [6]  Erroneously named in the FAC as "Trustee Corps d/b/a/ MTC Financial, Inc."

28  [7]  The court may take judicial notice of matters of public record on a motion to dismiss. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

(OneWest/MERS RJN at Exh. 4; Trustee Corps RJN at Exh. D.) The Notice of Default informed Plaintiffs that they had defaulted on their payments on Loan 1 beginning on March 1, 2009, and that, as of September 29, 2009, they owed a total of $20,469.93. (Id.) The Notice of Default also provided the address and phone number of OneWest, and advised Plaintiffs to contact OneWest "[t]o find out the amount [they] must pay, [or] to arrange for payment to stop the foreclosure." (Id.) The Notice of Default also expressly stated that Trustee Corps was acting as an agent for OneWest, and was signed by a Trustee Corps representative. (Id.)

On January 4, 2010, a Notice of Trustee's Sale was recorded, notifying Plaintiffs that, as a result of their default, a public auction would be held to sell the Property. (OneWest/MERS RJN at Exh. 5; Trustee Corps RJN at Exh. E.) The Property was ultimately sold on July 12, 2010 to Defendant Balboa Arms Drive Trust 5402-340 HSBC Financial as Trustee ("Balboa Trust"), and a Trustee's Deed Upon Sale recorded on July 30, 2010. (FAC ¶ 51; OneWest/MERS RJN at Exh. 6; Trustee Corps RJN at Exh. F.)

Plaintiffs commenced the instant action in California Superior Court on October 12, 2010 against Defendants Balboa Trust, OneWest, Newport, Trustee Corps, and MERS. (Doc. No. 1 Exh. A.) Defendant Trustee Corps removed the action to federal court on October 21, 2010, citing federal question jurisdiction under 28 U.S.C. § 1441(b), in which it was joined by OneWest. (Doc. Nos. 1 & 4.) Trustee Corps and OneWest/MERS then brought two separate motions to dismiss Plaintiffs' complaint, both of which were granted with leave to amend. (Doc. Nos. 5, 7 & 17.) Plaintiffs subsequently filed their FAC on May 10, 2011, naming the same five original defendants[8] as well as adding claims against IndyMac, Latman, and the Federal Deposit Insurance Corporation ("FDIC"). (FAC.) Trustee Corps and OneWest/MERS now once again bring motions to dismiss the FAC. (Doc. Nos. 26 & 28.) Plaintiffs have filed a single opposition to both motions. (Doc. No. 37.)

## II.   LEGAL STANDARD

A motion to dismiss under FED. R. CIV. P. 12(b)(6) challenges the legal sufficiency of

---

[8] On June 6, 2011, this court dismissed Newport from the suit without prejudice based on Plaintiffs' failure to serve Newport with a copy of the summons and original complaint. (Doc. No. 31.)

the pleadings. <u>De La Cruz v. Tormey</u>, 582 F.2d 45, 48 (9th Cir. 1978). In evaluating the motion, the court must construe the pleadings in the light most favorable to the non-moving party, accepting as true all material allegations in the complaint and any reasonable inferences drawn therefrom. <u>See, e.g.</u>, <u>Broam v. Bogan</u>, 320 F.3d 1023, 1028 (9th Cir. 2003). While Rule 12(b)(6) dismissal is proper only in "extraordinary" cases, <u>United States v. Redwood City</u>, 640 F.2d 963, 966 (9th Cir. 1981), the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). The court should grant 12(b)(6) relief only if the complaint lacks either a "cognizable legal theory" or facts sufficient to support a cognizable legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).

## III.   DISCUSSION

### A.   Challenges to Foreclosure

At the outset, it should be noted that, in its previous order dismissing the original complaint, the court required Plaintiffs to "make a showing of their ability to tender any outstanding indebtedness" before they could re-allege their causes of action for wrongful foreclosure, quiet title, and setting aside the sale of the Property. (Doc. No. 17 p.17.) The court also set forth several ways in which Plaintiffs could make such a showing, such as by producing "copies of loan applications in which Plaintiffs have set forth their assets and liabilities, bank account statements, and brokerage statements" from "the last twelve months." (<u>Id.</u>) Although the FAC re-alleges causes of action for wrongful foreclosure and quiet title (FAC ¶¶ 224-31, 295-302), Plaintiffs have yet to file any documents demonstrating their ability to tender the amount owed on the contested loans.

Plaintiffs claim that they "are willing and able and hereby offer to tender any and all amounts due to any Defendant," although that amount "cannot be known" at present. (<u>Id.</u> ¶ 112.) Plaintiffs also claim that they have located a qualified buyer who stands willing to purchase the Property from them for $361,123—the amount that Plaintiffs allege is the true amount owing on their loan—and that a purchase offer and letter of intent from the buyer can be produced "[i]f the court should require it." (<u>Id.</u> at p.7, ¶ 9.)

However, even if Plaintiffs were to provide evidence of the existence of this alleged buyer, a showing of Plaintiffs' ability to pay their outstanding indebtedness that is contingent upon some other event—here, the purchase of the Property by an individual who is not a party to the suit—is not tender, as Trustee Corps, OneWest, and MERS correctly point out:

> The rules which govern tenders are strict and strictly applied . . . . The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that *it needs only acceptance by the one to whom it is made to complete the transaction*.

Gaffney v. Downey Sav. & Loan Assn., 200 Cal. App. 3d 1154, 1165 (Cal. Ct. App. 1998) (original emphasis omitted) (emphasis added). Because Plaintiffs have not come forward with evidence showing an *unconditional* ability to pay, they have not satisfied their obligation to tender the amount owed as required by this court's order.

Plaintiffs also argue that "[t]ender cannot be required when the amount owed has been lawfully disputed by the borrower and any foreclosure must be stayed to permit an accounting or adjudication of the amount of Plaintiffs' loan debt." (Doc. No. 37 p.11.) However, the cases cited by Plaintiffs in support of this position both relate to situations in which the foreclosure sale of a property was then pending, and stay of the foreclosure was appropriate to allow the plaintiffs to pursue legal relief and determine the actual amount of the debt owed. See More v. Calkins, 85 Cal. 177 (1890); Stockton v. Newman, 148 Cal. App. 2d 558 (1957). Here, because the foreclosure sale of the Property has already occurred, these cases are inapposite to the question of whether Plaintiffs should now required to tender the amount owed in order to challenge that foreclosure.

Therefore, Plaintiffs' seventh and sixteenth causes of action for wrongful foreclosure and quiet title, respectively, are dismissed as to all defendants.[9] Because Plaintiffs appear to have misunderstood the nature of tender, leave to amend should be granted to give them another opportunity to make a proper showing. However, for the reasons discussed below,

---

[9] Trustee Corps goes so far as to argue that Plaintiffs' failure to allege tender also justifies striking "any claim implicitly integrated to the sale." (Doc. No. 28-1 p.1.) However, this significantly overstates the scope of this court's order. The tender requirement extends only to those causes of action that directly challenge the foreclosure proceeding. (See Doc. No. 17 p.8.)

1  these claims may only be re-alleged against Defendant OneWest.

2  **B.   Trustee Corps' Immunity**

3  The court previously found that Trustee Corps was entitled to immunity from suit under

4  several different theories. (Doc. No. 17 pp. 14-16.) Trustee Corps now raises the same

5  objections to Plaintiffs' causes of action in the FAC.

6  **1.   Privileged conduct under CAL. CIV. CODE §§ 47 & 2924(d)**

7  CAL. CIV. CODE §§ 47 and 2924(d) provide trustees with absolute immunity from

8  liability for tort actions related to the filing of a notice of default or a notice of sale pursuant

9  to CAL. CIV. CODE § 2924(a). (Doc. No. 17 p.15.) Here, Plaintiffs' claims against Trustee

10  Corps arise from Trustee Corps's filing of the Notice of Default, which allegedly misstated the

11  amount owed by Plaintiffs, and its subsequent filing of the Notice of Trustee's Sale, which

12  Plaintiffs claim Trustee Corps was not authorized to do. (FAC ¶¶ 8, 11, 37 & 53.) Both these

13  actions are privileged pursuant to the above-cited statutes. Therefore, the three tort causes of

14  action stated in the FAC—specifically, the eighth, ninth, and tenth causes of action for breach

15  of fiduciary duty, intentional misrepresentation, and negligent misrepresentation,

16  respectively— should be dismissed as to Defendant Trustee Corps. Because this privilege is

17  absolute, and because this issue was already addressed by the court in its earlier order, no leave

18  to amend is granted with regard to these claims.

19  **2.   Duties owed by trustee**

20  As this court previously found, in California, the duties of a trustee under a deed of trust

21  are strictly limited to either taking the necessary steps to foreclose if the debtor defaults, or

22  reconveying the deed of trust if the debt owed is fully satisfied. (Doc. No. 17 p.16 (citing

23  Heritage Oaks Partners v. First Am. Title Ins. Co., 155 Cal. App. 4th 339, 345 (Cal. Ct. App.

24  2007)).) These duties are defined and regulated by statute. Therefore, any cause of action

25  against a trustee that is based on acts taken pursuant to either of these duties is prohibited

26  unless the plaintiff is able to state a claim for violation of one of these statutes, or of the terms

27  of the deed of trust itself. (Id.)

28  Plaintiffs here allege each and every cause of action against all defendants

indiscriminately. However, almost all of the statutory violations cited do not describe or relate to the duties of a trustee, who are merely "middlemen" in the foreclosure process. (Id. at p.15; see, e.g., FAC ¶¶ 96-122, 182-203.) Therefore, because no claim can be stated against Trustee Corps under these statutes, Plaintiffs' second, third, fourth, fifth, sixth, and fourteenth claims for violation of TILA, conversion, and violations of RESPA, the Fair Debt Collections Practices Act ("FDCPA"), the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), and the Home Ownership and Equity Protection Act ("HOEPA") should all be dismissed. Plaintiffs also claim that Defendants generally have a duty "to put as much consideration to [*sic*] Plaintiffs' interests as to Defendants' interests" in support of their claim for breach of the implied covenant of good faith and fair dealing (FAC ¶ 264(a)); this also fails to state one of the specific duties of a trustee.

Further, neither of Plaintiffs' contractual claims allege that Trustee Corps has violated any of the terms of the Deed of Trust. Rather, the first and twelfth claims for breach of contract and breach of implied covenant of good faith and fair dealing both appear to relate to alleged violations of the Modification Agreement, to which Trustee Corps was not a party. (See, e.g., FAC ¶¶ 89, 261.) Therefore, these two claims must also be dismissed as failing to state violations of contractual obligations owed by Trustee Corps to Plaintiffs.

Finally, because Trustee Corps, in its limited role, is not alleged to owe or be owed any amount to or by Plaintiffs, the fifteenth cause of action for an accounting must also be dismissed.

Again, because the court has already addressed the issue of this immunity in its previous order, no leave to amend is granted with regard to these claims.

### 3.    Agent's immunity rule

Finally, Trustee Corps once again raises the so-called "agent's immunity rule" in arguing that it is immune from liability for the claims raised in the FAC. As this court previously stated, under the agent's immunity rule, "an agent is not liable for conspiring with the principal when the agent is acting in an official capacity on behalf of the principal." (Doc. No. 17 p.16 (quoting Panoutsopoulos v. Chambliss, 157 Cal. App. 4th 297, 304 (Cal. Ct. App.

2007).) Exceptions to this rule exist "when the agent is alleged to have acted at least partially in furtherance of its own financial gain or in violation of its own duties to the plaintiff." (<u>Id.</u>) There are no allegations that any of the actions taken by Trustee Corps were taken other than on OneWest's behalf as its agent, or that Trustee Corps derived some separate financial benefit from its allegedly wrongful actions. Therefore, to the extent that Plaintiffs seek to hold Trustee Corps liable for OneWest's actions as a co-conspirator (<u>see, e.g.</u>, FAC at p.2 (alleging that Defendants "are jointly and severally responsible for the acts and/or omissions of the other" as a result of "the conspiratorial nature of the misdeeds alleged herein")), that theory also fails.

Thus, the three theories of immunity discussed above entitle Trustee Corps to dismissal with prejudice of all causes of action against it except the eleventh cause of action for violation of CAL. BUS. & PROF. CODE § 17200 and the thirteenth cause of action for violation of CAL. CIV. CODE § 2923. These remaining claims are addressed below.

**C.     Other Causes of Action**

**1.     Breach of contract (OneWest/MERS)**

As discussed above, Plaintiffs' breach of contract claim is based on alleged violations of the terms of the Modification Agreement that Plaintiffs entered into with IndyMac. However, neither OneWest nor MERS were parties to the Modification Agreement, nor is there any evidence from the public record that IndyMac ever held an interest in Plaintiffs' Deed of Trust, such that OneWest might be held liable as an assignee or successor in interest to the Modification Agreement. Therefore, no breach of contract cause of action can be stated against either OneWest or MERS, and this claim is dismissed with prejudice as to both these defendants.

**2.     Violation of TILA (OneWest/MERS)**

Plaintiffs' TILA cause of action alleges that Defendants failed to disclose certain terms of the Modification Agreement to Plaintiffs, including "the fact that the reformed refinance contract was not permanent as indicated." (FAC ¶ 102.) Plaintiffs seek relief in the form of both rescission and damages. First, as OneWest and MERS correctly point out, any right of rescission under TILA is terminated upon foreclosure sale of the property. (Doc. No. 26-1 p.8.)

1    Indeed, the court pointed this out in its order granting OneWest and MERS's previous motion

2    to dismiss. (<u>See</u> Doc. No. 17 p.7 ("[T]he right to rescission is also terminated 'upon sale of the

3    property,' as has already occurred in this case. (quoting 12 C.F.R. § 226.23(a)(3))).) Second,

4    Plaintiffs' claim for damages under TILA is time-barred by TILA's one-year statute of

5    limitations. <u>See</u> 15 U.S.C. § 1640(e). Plaintiffs entered into the Modification Agreement with

6    IndyMac on or around May 8, 2008. (FAC ¶ 104 & Exh. III.) According to Plaintiffs, they

7    became aware that the terms of the Modification Agreement had been misrepresented to them

8    approximately four months later, on or around September or October of 2008,[10] when OneWest

9    "arbitrarily breached the newly reformed loan contract [and] reject[ed] and return[ed]

10   [P]laintiffs' agreed upon lower monthly payments." (<u>Id.</u> at p.6.) It is at this point that the

11   statute of limitations began to run. However, Plaintiffs did not file the instant suit until

12   October 12, 2010, and even then did not allege a TILA cause of action until the filing of the

13   FAC on May 10, 2011. Both these dates are well outside of TILA's one-year statute of

14   limitations. Therefore, Plaintiffs' claims for rescission and damages under TILA are both

15   barred, and are dismissed with prejudice as to Defendants OneWest and MERS.

16                  **3.      Conversion (OneWest/MERS)**

17          Plaintiffs have also filed a cause of action against all defendants for conversion,

18   apparently based on their improper taking and/or holding of either the security instruments

19   encumbering the Property or the Property itself. (<u>See</u> FAC ¶¶ 126-127, 133.) As OneWest and

20   MERS correctly note, no action for conversion can lie with regard to real property. <u>Munger</u>

21   <u>v. Moore</u>, 11 Cal. App. 3d 1, 7 (1970). Moreover, Plaintiffs did not hold an ownership interest

22   in the Deed of Trust; that security named MERS as its original beneficiary, whose interest was

23   later transferred to OneWest as expressly permitted by the terms of the instrument itself. (<u>See</u>

24   OneWest/MERS RJN at Exh. 1, p.10 ("The Note or a partial interest in the Note (together with

25   this Security Instrument) can be sold one or more times without prior notice to Borrower.").)

26   _____

27          [10] Elsewhere in the FAC, Plaintiffs assert that OneWest improperly returned their
     payments on May 12, 2008 (FAC ¶ 107); however, as this contradicts Plaintiffs' earlier
28   account of the sequence of events, the court will give Plaintiffs the benefit of the doubt and
     construe the timing of their discovery of the alleged TILA violation to have occurred at the
     later date.

Plaintiffs appear to be alleging that they were induced under false pretenses into executing the Deed of Trust on the Property. (See FAC ¶ 162 ("Defendants have committed wrongful violations of conversion under U.S.C. § 77 et seq. [sic], in seducing [P]laintiffs into a contract of adhesion and subsequently assigning Plaintiffs' Security Instruments to Defendant One West Bank [sic].").) However, this wrong is not properly addressed in a conversion claim. Therefore, Plaintiffs' third cause of action for conversion against Defendants OneWest and MERS is also dismissed with prejudice.

### 4.   Violation of RESPA (OneWest/MERS)

Plaintiffs claim that Defendants violated their rights under RESPA after Plaintiffs sent a qualified written request ("QWR") to IndyMac on or around March 30, 2009 and Defendants failed to acknowledge receipt of or reply to the letter, and did not correct the errors Plaintiffs identified in the calculation of their debt. (FAC ¶¶ 183-184.) However, Plaintiffs have not shown how OneWest, MERS, or any other defendant besides IndyMac can be held liable for an alleged failure to respond to a letter sent to IndyMac and IndyMac alone.[11] Therefore, Plaintiffs' fourth cause of action for violation of RESPA must also be dismissed with prejudice as to Defendants OneWest and MERS.

### 5.   Violation of FDCPA (OneWest/MERS)

Plaintiff further alleges that Defendants violated the FDCPA by engaging in certain unfair debt collection practices, such as failing to verify the amount of debt owed, continuing to attempt to collect on the debt after Plaintiffs disputed it, attempting to collect an amount not expressly authorized by agreement or permitted by law, falsely stating the amount owed, and threatening to take unlawful actions against Plaintiffs. (FAC ¶¶ 218(c)-(e).) Although it is unclear what communications with OneWest and/or MERS Plaintiffs are referring to in making these allegations, it is evident from the public record that MERS and OneWest's involvement in collecting on Plaintiffs' loans arose directly out of the beneficial interest in the Deed of Trust held by each defendant at some point in time. Under the FDCPA, a "debt collector" is

---

[11] It should also be noted that by March 30, 2009, IndyMac had already ceased to exist. (See Doc. No. 17 p.5.)

defined as someone whose "principal purpose . . . is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). This definition explicitly excludes "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A). Thus, to the extent that OneWest and/or MERS were undertaking certain debt collection activities, they were doing so on their own behalf,[12] and are not liable for those actions under the FDCPA. The FDCPA cause of action against OneWest and MERS must therefore be dismissed with prejudice.[13]

### 6.    Violation of Rosenthal Act (OneWest/MERS)

Plaintiffs also bring a Rosenthal Act claim based on Defendants' alleged unfair debt collection practices. (FAC ¶¶ 220-223.) Unlike the FDCPA, the Rosenthal Act's definition of a "debt collector" *does* include creditors collecting on their own debts. See CAL. CIV. CODE § 1788.2(c) (defining a debt collector as "any person who, in the ordinary course of business, regularly, ***on behalf of himself or herself*** or others, engages in debt collection" (emphasis added)). However, the FAC fails to state what acts taken by Defendants would be considered unlawful under the Rosenthal Act. The FAC merely states that Defendants "threatened to take actions prohibited by law, including, without limitation: falsely stating the amount of a debt; increasing the amount of a debt by including amounts not permitted by law or contract; improperly foreclosing upon the Subject Residence; and using unfair and unconscionable means in an attempt to collect a debt." (FAC ¶ 221.) However, none of these vague statements recite any facts that would give Defendants "fair notice of what [Plaintiffs'] claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957), abrogated on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); see also Ashcroft v. Iqbal, 129

---

[12]  Plaintiffs also allege that OneWest specifically acted in its role "as a 'servicer and debt collector' for the failed assets of [D]efendant IndyMac Bank FSB." (Id. ¶ 209.) However, this allegation is flatly contradicted by the public record, which indicates that beneficial interest in the Deed of Trust passed directly from MERS to OneWest, and was never held by IndyMac at any time.

[13]  OneWest and MERS also argue that "foreclosing on a property pursuant to a deed of trust is not debt collection within the meaning of the [Rosenthal Act] or the FDCPA." (Doc. No. 26-1 p.14.) However, they fail to cite any controlling authority for this proposition.

1   S.Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported

2   by mere conclusory statements, do not suffice."). Thus, because Plaintiffs have failed to

3   identify those acts that form the basis of their Rosenthal Act claim, they have not met the

4   minimal pleading standard under FED. R. CIV. P. 8(a)(2), and this claim must also be dismissed

5   against Defendants OneWest and MERS. Because there is some possibility that Plaintiffs may

6   be able to restate the allegedly unlawful collection practices with more specificity, leave to

7   amend should be granted; therefore, dismissal of this claim is without prejudice as to

8   Defendant OneWest, who was the owner of the beneficial interest in the Deed of Trust at or

9   around the time of foreclosure, when the unspecified, allegedly unlawful acts are said to have

10  occurred.

11                    **7.      Breach of fiduciary duty (OneWest/MERS)**

12          Plaintiffs' claim for breach of fiduciary duty is based upon the advice they allegedly

13  received and relied upon from Defendant Latman in entering into the Modification Agreement.

14  (FAC ¶¶ 233-234.) However, as OneWest and MERS point out, there is no fiduciary

15  relationship between a debtor and creditor. See Downey v. Humphreys, 102 Cal. App. 2d 323,

16  333 (1951). Without a fiduciary relationship, no breach of fiduciary duty can exist. Therefore,

17  this cause of action is dismissed with prejudice as to Defendants OneWest and MERS.

18                    **8.      Intentional misrepresentation (OneWest/MERS)**

19          FED. R. CIV. P. 9(b) requires a party alleging fraud or mistake to "state with particularity

20  the circumstances constituting [that] fraud or mistake." This pleading standard is met if the

21  complaint "identifies the circumstances constituting fraud so that the defendant can prepare

22  an adequate answer from the allegations. The complaint must specify such facts as the times,

23  dates, places, benefits received, and other details of the alleged fraudulent activity."

24  Neubronner v. Milken, 6 F.3d 666, 671 (9th Cir. 1993) (internal quotation marks and citations

25  omitted). In addition, "[t]he plaintiff must set forth what is false and misleading about a

26  statement, and why it is false." In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1548

27  (9th Cir. 1994).

28          Plaintiffs' ninth cause of action alleges that Defendants intentionally misrepresented

certain "material facts" regarding the loan, the property, and the Modification Agreement. (FAC ¶¶ 236-237, 239.) However, they have failed to plead those misrepresentations with the particularity required by Rule 9(b). At the outset, it should be noted that the FAC contains almost no factual allegations regarding the initial process by which Plaintiffs entered into the original loan agreement with Newport and MERS. The focus of the FAC appears to be on the Modification Agreement, and Plaintiffs' interactions with Latman in negotiating and entering into that Agreement. There is no reference to any role that OneWest or MERS might have played in this process.[14]

The only indication that OneWest *could* potentially be linked to the allegedly fraudulent conduct of Latman and IndyMac is Plaintiffs' contention that OneWest contacted them approximately four months after the Modification Agreement was executed to inform Plaintiffs that it was withdrawing the Agreement and would no longer accept the new lower monthly payments from them. (FAC at p.6.) If OneWest did in fact make these representations, such statements could constitute fraud; they could also support Plaintiffs' general allegations of conspiracy between OneWest and IndyMac. However, because Plaintiffs have not stated when, where, and how OneWest made these statements to them, they have not met Rule 9(b)'s pleading standards, and this claim must be dismissed as to Defendants OneWest and MERS. Further, because there is no indication that MERS was involved in any alleged fraud at any stage, this claim is dismissed against MERS with prejudice. However, the dismissal as to OneWest is without prejudice, and Plaintiffs will be given the opportunity to amend their allegations against OneWest only to comply with Rule 9(b).

### 9. Negligent misrepresentation (OneWest/MERS)

Because Plaintiffs' negligent misrepresentation claim is held to the same heightened pleading standard under Rule 9(b), and because that claim appears to arise out of the same conduct that forms the basis for their intentional misrepresentation claim, this claim must also

---

[14] Indeed, public records indicate that at the time Plaintiffs executed the Modification Agreement with IndyMac, OneWest was not even in existence. (See Doc. No. 26-1 pp.15-16 (citing Nicholson v. OneWest Bank, 2010 U.S. Dist. LEXIS 45993, *10 (N.D. Ga. Apr. 20, 2010) (describing OneWest as "newly formed" around March 19, 2009)).)

1   be dismissed for the same reasons described above. Dismissal of the claim is with prejudice

2   as to Defendant MERS, and without prejudice as to Defendant OneWest.

3

4   **10.    Violation of CAL. BUS. & PROF. CODE § 17200 (OneWest/MERS and Trustee Corps)**

5          Plaintiffs allege generally that Defendants "committed unlawful, unfair and/or

6   fraudulent business practices, as defined by California Business & Professions Code § 17200,

7   by engaging in unlawful, unfair and fraudulent business practices as alleged herein." (FAC

8   ¶ 254.) Aside from this circular statement, Plaintiffs make no other reference to which specific

9   acts committed by Defendants form the basis for their § 17200 claim. As discussed above and

10  below, all of Plaintiffs' other causes of actions are to be dismissed as inadequately pled at this

11  stage; therefore, there is no legal violation that can be "borrowed" to support a claim for

12  "unlawful" business practices. See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal.

13  4th 163, 180 (1999). Plaintiffs have also failed to adequately plead their allegations of fraud

14  (see supra Parts III.C.8-9), and have not indicated in what manner the practices alleged are

15  "unfair" within the meaning of § 17200—by, for example, demonstrating that they "threaten[]

16  an incipient violation of an antitrust law," Byars v. SCME Mortgage Bankers, Inc., 109 Cal.

17  App. 4th 1134, 1147 (2003). Therefore, this claim must also be dismissed as to all moving

18  defendants. However, because leave to amend is to be granted with regard to certain of

19  Plaintiffs' claims against OneWest, dismissal of the claim against OneWest is without

20  prejudice, while dismissal against MERS and Trustee Corps is with prejudice.

21

22  **11.    Breach of implied covenant of good faith and fair dealing (OneWest/MERS)**

23         Plaintiffs further claim that Defendants violated the implied covenant of good faith and

24  fair dealing implicit in the Modification Agreement when they "[f]ail[ed] to put as much

25  consideration to [sic] Plaintiffs' interests as to Defendants' interests," "[i]nitiat[ed] foreclosure

26  proceedings on the plaintiffs [sic] home despite not having promised not [sic] to do so and

27  fail[ed] to comply with applicable California law," and "[f]ailed to provide proper notice

28  before selling plaintiffs [sic] home at auction." (FAC ¶ 264.) However, as discussed above,

neither OneWest nor MERS was a party to the Modification Agreement; therefore, they cannot be said to have breached either its express or its implied terms. This claim must therefore be dismissed with prejudice as to OneWest and MERS.

### 12. Violation of CAL. CIV. CODE § 2923.5 (OneWest/MERS and Trustee Corps)

Plaintiffs allege that Defendants violated CAL. CIV. CODE § 2923.5 when they filed the Notice of Default without first contacting them. (FAC ¶ 269.) It is true that § 2923.5(a)(1) requires trustees and beneficiaries to contact or attempt to contact borrowers at least thirty days prior to filing a notice of default in order to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." However, because the foreclosure process is already complete here and the Property has already been sold, no § 2923.5 action may now be brought. Mabry v. Superior Court, 185 Cal. App. 4th 208, 214 (Cal. Ct. App. 2010) ("The right of action [under § 2923.5] is limited to obtaining a postponement of an impending foreclosure to permit the lender to comply with [that section]."). Therefore, this cause of action is barred, and is dismissed as to Defendants OneWest, MERS, and Trustee Corps with prejudice.

### 13. Violation of HOEPA (OneWest/MERS)

In support of their HOEPA cause of action, Plaintiffs re-allege the same set of general facts regarding the circumstances surrounding the execution of the Modification Agreement, including Defendants' allegedly "superior knowledge of the decreasing value of the [Property]" and misrepresentations made in order to induce Plaintiffs into entering an agreement that would later be withdrawn. (FAC ¶¶ 281-285.) However, Plaintiffs fail to state which provisions of the act are allegedly violated by Defendants' actions. Plaintiffs also fail to demonstrate that the loan itself is subject to HOEPA's requirements. See 15 U.S.C. § 1602(aa)(1) (defining mortgages subject to HOEPA as those whose interest rates or required fee payments exceed certain levels). Further, any action by Plaintiffs under HOEPA appears to be time-barred; § 1640(e) requires any action to be brought within "1 year from the date on which the first regular payment of principals is due under the loan." Plaintiff's first principal

1  payment under the Modification Agreement would have been due in June of 2008. (See FAC

2  at Exh. III ("The interest rate of 6.625% stated in Section 2 of your Note will be reduced to

3  4.625% effective 6/1/2008.").) However, the instant action was not filed until October 12,

4  2010, and the HOEPA cause of action was not raised until the FAC was filed on May 10, 2011.

5  Therefore, Plaintiffs' cause of action under HOEPA is dismissed with prejudice.

6  **14.    Accounting (OneWest/MERS)**

7        Finally, Plaintiff brings an action for an accounting, alleging that "the true and equitable

8  amount due on plaintiff's [*sic*] mortgage debt is unknown to [P]laintiffs and cannot be

9  determined without a judicial accounting." (FAC ¶ 289.) However, as Defendants point out,

10  CAL. CIV. PROC. CODE § 580d prohibits judgments to be rendered "for any deficiency upon a

11  note secured by a deed of trust or mortgage upon real property . . . in any case in which the real

12  property . . . has been sold by the mortagee or trustee under power of sale contained in the

13  mortgage or deed of trust." See also Baxter v. Krieger, 157 Cal. App. 2d 730, 732 ("[T]he right

14  to an accounting . . . may be dispensed with where under the evidence the need or right to one

15  is not shown."). Here, because the foreclosure sale of the Property has already been completed,

16  Plaintiff may not bring an action for an accounting on the Deed of Trust. Therefore, this cause

17  of action is dismissed with prejudice as to Defendants OneWest and MERS.

18  //
19  //
20  //
21  //
22  //
23  //
24  //
25  //
26  //
27  //
28  //

## IV.   CONCLUSION

For the reasons set forth above, the court hereby GRANTS Defendant Trustee Corps's and Defendants OneWest and MERS's motions to dismiss. (Doc. No. 26 & 28.) All claims against Defendants Trustee Corps and MERS are dismissed with prejudice. In addition, all claims against Defendant OneWest *except* Plaintiffs' seventh, ninth, tenth, eleventh, and sixteenth claims for wrongful foreclosure, intentional misrepresentation, negligent misrepresentation, violation of CAL. BUS. & PROF. CODE § 17200, and quiet title, respectively, are dismissed with prejudice. Plaintiffs may file an amended complaint, re-alleging those five causes of action *only* against Defendant OneWest. In addition, the wrongful foreclosure and quiet title claims may only be re-alleged once Plaintiffs have made a valid showing of ability to tender, as described above and in this court's April 4, 2010 order. (Doc. No. 17.) Any such amended complaint must be filed on or before **August 26, 2011**.

**IT IS SO ORDERED.**

DATED:  August 1, 2011

Hon. Jeffrey T. Miller
United States District Judge